Louis Scarlata v. Commissioner. Rose Scarlata v. Commissioner.
Scarlata v. Commissioner
Docket Nos. 29655, 29656.
United States Tax Court
1951 Tax Ct. Memo LEXIS 223; 10 T.C.M. (CCH) 509; T.C.M. (RIA) 51154; May 23, 1951
Frank C. Scott, C.P.A., P.O. Box 1904, Stockton, California, for the petitioners. John D. Picco, Esq., for the respondent. *224 HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined deficiencies in income tax for 1944 in the amount of $644.94 in Docket No. 29655 and in the amount of $644.93 in Docket No. 29656. The petitioners reported their respective shares of community income in their separate returns. The question which is presented is whether the respondent erred in not offsetting overpayment of 1941 tax as a credit against the tax deficiencies determined for 1944. The petitioners urge that under the doctrine of equitable estoppel the respondent is barred from determining the 1944 deficiencies. Findings of Fact We find as facts in these proceedings the facts which have been stipulated. The facts are as follows: The petitioners are residents of California, and they filed their returns for 1944 with the collector for the first district of California. Louis Scarlata is referred to hereinafter as the petitioner. The petitioner was engaged in the business of farming and pressing oil from olives. In 1942, a net operating loss of $16,972.64 was sustained in the operation of the petitioner's business. The net operating loss was shown by the petitioner's *225 books of account and in the joint income tax return for 1942 which was timely filed. Instead of applying the 1942 net operating loss first to 1941 under a carry-back before carrying it over to a succeeding year as is required by section 122 of the Code, as amended by section 153 of the 1942 Revenue Act (see also Regulations 111, sections 29.122-3, 29.122(b)), the 1942 operating loss was carried forward to 1943 in the amount of $8,903.18 and to 1944 in the amount of $8,069.46. No carry-back to 1941 was ever made of any part of the 1942 net operating loss. The petitioners timely filed a joint income tax return for the calendar year 1943. This return disclosed the net income to be $8,903.18 prior to the application of the net operating loss carry-over from 1942. Carry-over of the 1942 operating loss resulted in the elimination of taxable income in 1943, and no tax was due for 1943 as the result of the carry-over. In 1943 an agent of the respondent reviewed the return of the petitioners for the calendar year 1941 and made an examination of the books and records pertaining to that year for the purpose of verifying the correctness of the return. The agent rendered an audit report dated *226 June 2, 1943, in which he recommended certain adjustments that increased the net income to $14,347.69 and resulted in a deficiency in tax for the year 1941 of $894.40. The internal revenue agent in charge approved this report, and on July 14, 1943, gave petitioners notice of the proposed deficiency in tax. On August 31, 1943, the 90-day letter of deficiency was issued with respect to the year 1941 which gave the determination of a deficiency in the amount of $894.40, which amount was ultimately paid by the petitioners. As of about March 15, 1945, the matter of petitioners' income tax liability for the year 1941 was closed. None of the adjustments made by respondent in the audit of petitioners' return for 1941 related to any operating loss deduction, nor did the petitioners make any claim for such deduction in the return for 1941 or during the progress of the audit pertaining to that year. The petitioners timely filed individual income tax returns for the calendar year 1944, in which they applied as a carry-over from 1942 an unused operating loss deduction in the amount of $8,069.46. In reviewing the 1944 returns, the respondent's agents disallowed the carry-over of this deduction *227 on the ground that section 122 of the Code first required its carry-back to the year 1941, with the result that there was no unused operating loss deduction to carry forward to the year 1944. The petitioners overpaid their income tax for 1941 to the extent of $2,069.83, that is, the amount of $1,175.43 originally reported and paid, and the deficiency of $894.40 pursuant to the 90-day letter issued August 31, 1943, also paid by the petitioners. The petitioners failed to file a timely claim for refund of the overpaid tax for 1941, and the parties did not execute any waiver on the statute of limitations for 1941 under section 276 (b) of the Code. If the petitioners had complied with the provisions of section 122 of the Code, or if the respondent had made a timely determination with respect to their income tax liability for the year 1943, there would have been an adjusted net income for 1943 of $6,278.23 and a deficiency in income tax for 1943 in the amount of $779.96. No waivers were executed under section 276 (b) of the Code with respect to the year 1943. The petitioners were not familiar with the income tax laws and regulations. They were not fluent in the use of the English language. *228 Opinion The petitioners failed to apply properly the net operating loss deduction provisions of the Code, section 122 (a), (b), and (e), by first carrying back to 1941 the net operating loss of 1942 before carrying forward the unused portion of the loss to years after 1942. They are unacquainted with the laws of Federal taxation, but the error is one which those who are, perhaps, better able to understand the statutes have made. See (promulgated January 12, 1951). The facts here are closely similar to the facts in Wiener Machinery Co., Inc., and here, as in that proceeding, we are unable to give relief for the reasons set forth in the cited cases. It is held that the respondent did not err in disallowing deduction in 1944 of part of the unused 1942 net operating loss as a carry-over loss deduction, and that there is no basis in the facts for equitable estoppel of the respondent in making the deficiency determinations for 1944. See, also, (C.A.D.C., 1936), and . The petitioners appear to recognize that this *229 Court lacks jurisdiction to apply the doctrine of equitable recoupment. See , and the authorities cited therein. They contend, nevertheless, that since there was overpayment of tax for 1941, there must be an automatic offset against the deficiencies in the tax for 1944. The argument and contentions of the petitioners have been considered, but we find them to be legally inefficacious. "Recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." ; 47 Am. Jur., Setoff and Counterclaim, sec. 12. In , it was said that: "It [recoupment] has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made subject to suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." The petitioners evidently fail to understand why this Court lacks jurisdiction to apply the doctrine of recoupment. *230 Without undertaking an extensive explanation, suffice it to say that the powers of this Court are derived from Federal statutes, and the Congress has not given this Court jurisdiction over the collection and refund of taxes. If we had such jurisdiction, recoupment could be pleaded by the petitioners as a defense in an action in which they were the defendants being sued by the Government for the 1944 deficiencies. These proceedings and this tribunal are not the time or the place to plead recoupment. We can not give aid to the petitioners in this respect. See , where we pointed out that "we have no power to require the application of an overpayment for one year to the liquidation of a tax liability for another." Decisions will be entered for the respondent.